Good morning. The first case is Meridith v. Parrish, and Mr. Petrie, when you're ready, sir, would you please proceed? May it please the Court, I'm Chris Petrie, and I represent the plaintiffs, the Meridiths, who I'll simply refer to as Meridith, as I did in my brief. Meridith sued the Parrishes, who I'll refer to as Parrish, as I did in my brief, for a declaratory judgment regarding certain real estate conveyances and accounting for various partnership profits and losses. There was a vence trial, and this is an appeal regarding the trial court's holding regarding a real estate transaction. As I'll describe more fully, the trial court made an inconsistent holding with its factual findings when it found that a deed that Meridith had provided Parrish to a farm was merely an equitable mortgage, and it found that the underlying debt to the mortgage had been paid by Meridith, but nevertheless, the court awarded Meridith's interest in the farm to Parrish. I submit to you that this inconsistency and, indeed, self-contradiction is reversible error. Now, for the background, Meridith and Parrish are brothers-in-law. Through a partnership, Meridith and Parrish operated a funeral home in Lebanon, Illinois, and a farm in San Diego, Illinois. In addition, Meridith operated his own funeral home in Highland, Illinois. The parties jointly owned the farm. Originally, the purchase of the farm was initiated by Meridith's father, and the ownership of the farm was divided up 25 percent to Meridith's mother, 37.5 percent to Meridith, and 37.5 percent to Parrish. A loan from the Federal Land Bank for $67,000 was taken out on the farm, and at the suggestion of Meridith's father, the parties agreed that Meridith would be responsible for paying back 70 percent of the loan, and the other 30 percent would come from the farm's proceeds. Meridith agreed to take on 70 percent of the loan as compared to his 37.5 percent ownership of the farm, because Meridith's father and then Parrish were running the day-to-day operations of the rental of the farm. There came a time when Meridith was unable to make 70 percent payments on the loan, with the shortfall being made up by farm proceeds. Parrish expressed his concern, and as a result, Meridith gave Parrish a quit-claim deed, the Sandoval deed, for 32 percent of his interest in the farm, i.e., all but 5.5 percent of his interest. The evidence at trial showed, and the trial court found, that the deed was merely a security interest or an equitable mortgage. For instance, Parrish did not pay any money or provide any goods for the deed at the time the deed was given. Likewise, after the transaction, Meridith's partnership debt to Parrish was not reduced, and even Parrish acknowledged that Meridith's debt was not reduced. Furthermore, and again by Parrish's admission, the transaction was similar to a previous transaction, in which the parties had treated the deed regarding property in Decatur as merely a security interest. Finally, Parrish's expert admitted at trial that Meridith was entitled to a credit in his version of the accounting for Meridith's interest in the farm. This credit is inconsistent with Parrish's claim of a conveyance, because Parrish would essentially be paying for something he already owned. The trial court considered those evidence, that's the highlights of the evidence, but considered that evidence and other evidence, and found that the deed was intended merely as a security interest or an equitable mortgage. The evidence showed, and the trial court also found, that Meridith had paid back the loan on the farm. As I stated previously, the loan on the farm was originally with the Federal Land Bank. Eventually, the loan was combined with another partnership loan and eventually transferred to a home equity loan of Parrish at the Logan County Bank. Meridith testified that the loan from the Logan County Bank had been paid off. In fact, both Meridith and Parrish testified that Meridith continued to make payments on the loan even after it was paid off. And it was these overpayments on the loan that were the basis for Meridith's expert conclusion that Meridith had not only paid Parrish back, but in fact had overpaid him by $39,000. Perhaps most importantly, if you look at the total number of checks and the amount of checks, and the other consideration that was provided to the Logan County Bank, and you discount that by 50% to give Meridith credit for his 50% interest in the partnership, even at 50%, the total consideration paid to the Logan County Bank far exceeds the loan balance. And this led to the trial court holding that Meridith had in fact overpaid Parrish by $9,000. So now we arrive at the trial court's work. The trial court found the facts, as I stated above. It found that the parties intended the deed not to be an outright conveyance, but merely a security interest, based on the things that I talked about. The lack of consideration received for the deed, the fact that parties had treated another deed like this as a security interest, and Parrish's own expert admission regarding the credit and the accounting. The trial court also found that Meridith paid back the loan on the farm, based on the evidence that I talked to, the testimony of the parties, the testimony of the experts, and the checks that went to the Logan County Bank. It then applied well-established real estate and equitable mortgage law, which holds that if a party intends a deed to be not an outright conveyance, but merely a security interest, it's deemed an equitable mortgage, and the trial court deemed it an equitable mortgage. But then, inexplicably and erroneously, the trial court awarded Meridith's interest in the farm to Parrish. And I submit to you that this was error for three reasons. First, the order itself is inconsistent and self-contradictory. It's inconsistent to say that a deed is merely a security interest, to find that the loan on the related security interest has been paid back, while at the same time ordering Meridith to quit claiming any interest in the farm to Parrish. And Illinois law is littered with cases like this, where the remedy or the holding is inconsistent with the findings. And, in fact, the Laterno case, cited in my brief, is highly disruptive here. And the reason it's highly disruptive is that it's kind of the same factual situation. It involves competing interests, the land, the plaintiff had sued the defendant for ejection, arguing that the defendant was wrongfully in possession of his land. Well, in that case, the trial court found that the defendant was wrongfully in possession of the land, but it failed to order the defendant to either vacate the land or pay the plaintiff for the land. And this is what the reviewing court said in that situation. It is apparent that the judgment entered by the circuit court is inconsistent with the findings. In this case, it is the practice of this court to reverse the judgment and remand the case with directions to the trial court to enter the proper judgment. Laterno's rationale is commonly applied by Illinois courts. There are other cases cited in my brief where there's holdings that are inconsistent with the findings or there are inconsistent holdings. So that's the first reason the trial court erred, is the inconsistency and the self-contradictory nature of the order, which is plain on its face. The second reason it erred is it violated real estate and mortgage law. It's fundamental that if the underlying debt to a security interest is paid, title does not pass to the holder of the interest and instead vests with the owner of the property. That's the Fonda v. Miller case cited in my brief, and of course there are many cases from real estate law holding that. And in the case of an equitable mortgage like this one, where the deed is the security interest, the grantor of the deed is entitled to a re-deeding of the property to him. The trial court did just the opposite. Instead of ordering Parrish to re-deed to Meredith, it ordered Meredith, who had quit claiming all of his interests, to Parrish. So that's the second reason the trial court erred. It's holdings violated real estate and mortgage law. And the final reason the trial court erred is the order is too sweeping. Even putting those other errors aside, the order is too sweeping. After the deed in question was provided to Parrish, Meredith's mother gave him 12.5% of her interest in the farm. In addition, the deed itself reserved 5.5% for Meredith. So there was an 18% interest in the farm that was never subject to any deed. Yet the trial court ordered that Meredith quit claiming all of his interests in the farm to Parrish. And so that's the third reason the trial court erred. It's the order is simply just too sweeping. Against these clear errors, Parrish raises really only two arguments. First, he claims that the evidence displayed that Meredith intended the deed to be an outright conveyance. However, his burden here, having a factual finding against him, is to demonstrate that the trial court clearly erred, that its finding was against the manifest way of the evidence. For all the reasons that I stated above, including the fact that no cash or reduction of the partnership debt was given at the time of the deed, the fact that there was another similar transaction with the Cater property, where the parties considered the deed a security interest, and the experts credit to Meredith, which is inconsistent with the theory of an outright conveyance. For all of those reasons, the trial court's finding here is well supported, and it's certainly not clearly erroneous. Secondly, his other argument that Parrish makes is he claims that the farmland was part of the dissolution of the partnership. And as such, you can't review this one item by itself because it may be related to other items in the dissolution. And there are two problems with that theory. First, its premise is wrong. The land was owned by Parrish and Meredith as joint tenants with a full right of survivorship. That's what the deeds say. Not as common law partners. Thus, the land isn't subject to partnership dissolution analysis, not subject to the dissolution proceeding. Instead, the land issue, like the joint tenancy issue, should be analyzed using real estate and mortgage law. And that's really exactly what the trial court did. If you look at the methodology of the order, it's applying real estate and mortgage law. It's applying acceptable mortgage law all throughout the opinion. There's no sign of a dissolution analysis on the farmland. And I think this is a very important point. No one at trial put on a dissolution case, i.e., putting on fair market value evidence of the farm and the other assets of the partnership and then asking for their partnership percentage multiplied by that fair market value, lessening liabilities, of course, and saying that should be credited to my capital account, that should be my interest in the partnership. No one put on a case like that. Instead, both parties put on an equitable mortgage case. We put on a case that the deed was not intended as an outright conveyance. They put on a case that the deed was intended as an outright conveyance. They are now changing their tune on appeal to try and justify this order by saying, oh, the farmland was part of the dissolution and therefore the trial court could award it to us, regardless of what it found about the equitable mortgages and such. And there's another problem, perhaps even a greater problem with this theory, that Harris is putting forth. Even if you buy that the land was owned by the partnership, even though the deed say as joint tenants in common with the full right of survivorship, even if you buy that, and even if you buy that the trial court was actually intending in its analysis to award this land as part of the dissolution of the partnership, the trial court's still there. You can't do that. That's not how dissolutions work. You don't say, you get this, you get this, you get that, with these equitable tradeoffs that they're talking about in their brief. Instead, there has to be evidence of the fair market value of the assets of the partnership so that you can evaluate the assets and the partnership's interest. And that's the Weiss case cited in my brief. It holds that when a partnership is dissolving and you're evaluating the partnership interest in the assets, there has to be evidence of fair market value. Otherwise, the trial court has to be reversed. So in summary, the trial court should be reversed, and this court should enter a judgment awarding Meredith his portion of the farm under the Letourneau case and the other cases that I've talked about that deal with inconsistency between the remedy and the finance. In the alternative, this court should reverse the trial court and remand for further proceedings related to evidence of fair market value in the dissolution proceeding. That's all I have for now. I guess I will speak to you again on rebuttal. Okay, thank you. Mr. Roosevelt? Thank you. If it may please the Court, good morning. My name is Greg Roosevelt. Robert Long and Perry are here this morning in attendance. Thank you for your consideration. We look at the trial court's order and find the trial court, to be very clear, in its order at page 24 when it says what it's doing. The trial court clearly states this order confirms that the farm partnership and the Letourneau partnership are dissolved and refers to that as its conclusion, that testimony had been at trial of both parties, and you continue in this partnership. If testimony was consistent from both, Mr. Meredith and Mr. Perry, no, we cannot. In that instance, the trial court is dissolving a partnership. The trial court is doing it equitably, which the court is required to do, and separate these parties in a fashion. The court, after hearing three days of testimony, the complex financial interrelationships of these parties, it's a family situation that stemmed from a number of businesses, the Meyer Funeral Home in Lebanon, Illinois, which they had operated jointly, the Harris Land Trust, which is another funeral home operation in Highland, Illinois. That land trust was deeded, again, by Meredith to Parrish, Parrish being the legal owner of that real estate in Highland, Illinois. The deed had been transferred from, again, Meredith to Parrish. Testimony was adduced by the experts concerning the capital accounts of the respective parties in the business at Lebanon, with the capital account balance by Mr. Perry being significantly above, at least $40,000 above what it was for Mr. Meredith, and also there's testimony of the history of transfer of payments admitted to by Mr. Meredith from the Meyer Funeral Home, which has been more successful, to the Highland Funeral Home to support it in its operation. In the time that the deed occurred on the farmland, there was a stressor in the business for Mr. Meredith, one of those.